1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

AARON D. JOHNSON,                    )      Civil No.07cv957 MMA (WMc)
                                     )
                Plaintiff,           )      **REPORT AND RECOMMENDATION**
                                     )      **OF UNITED STATES MAGISTRATE**
v.                                   )      **JUDGE GRANTING DEFENDANTS'**
                                     )      **MOTION FOR SUMMARY**
                                     )      **JUDGMENT [DOC. NO. 69.]**
V.M. ALMAGER, ET AL.,                )
                                     )
                Defendants.          )

12

13

14

15

16

**I.**

17

**INTRODUCTION**

18

        In this prisoner civil rights case, Aaron D. Johnson ("Plaintiff") is proceeding *pro se* and *in*

19

*forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a).  Plaintiff alleges a

20

violation of his federal constitutional rights and his rights under the Americans with Disabilities Act

21

("ADA").

22

        This Report and Recommendation is submitted to United States District Judge Michael M.

23

Anello, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.3 of the United States District Court for the

24

Southern District of California.  After reviewing the pleadings, parties' briefs and exhibits filed in

25

support thereof, for the reasons set forth below, the Court recommends Defendants' Motion for

26

Summary Judgment be **GRANTED** as discussed below.

27

28

1

## II.  PROCEDURAL HISTORY

On February 8, 2010, Plaintiff filed a Second Amended Complaint.  (Doc. No. 53.)[1]  In his Second Amended Complaint, Plaintiff contends Defendants violated the Eighth Amendment by allegedly failing to refer him to a psychologist for verification of his dyslexia learning disability. Plaintiff further alleges Defendants failed to comply with the ADA by refusing to provide legal assistance and accommodation in accordance with the *Armstrong* Remedial Plan thereby hindering his access to courts.[2]  (Second Amended Complaint, ("SAC"), Doc. No. 56.)

Currently pending before the Court is Defendants' Motion for Summary Judgment filed August 9, 2010. [Doc. No. 69.]  Plaintiff filed an opposition on November 18, 2010.  [Doc. No. 76.] Defendants filed a reply in support of the motion for summary judgment on November 19, 2010. [Doc. No. 77.]

### III.

### FACTUAL ALLEGATIONS

On February 10, 2003, Plaintiff alleges his English teacher noticed Plaintiff "exhibited a high level of dyslexia in his class work" and recommended Plaintiff be tested for a learning disability.  (SAC, p. 4.)  On February 25, 2003, Plaintiff alleges he was referred to a clinical psychologist who "denied" his evaluation.  (*Id.*)  On May 28, 2003, Plaintiff filed an Inmate Appeal Form 602 with an attached CDC 1824 Form ("Reasonable Modification or Accommodation Request"), which requested legal assistance in light of Plaintiff's dyslexia.  (SAC p. 4.)  On July 11, 2003, Plaintiff attended a second consultation with a psychologist.  (*Id.*)  Plaintiff's claim of dyslexia could not be verified at that consultation.  (*Id.*)

On June 11, 2004, Plaintiff states he submitted another CDC 1824 Form.  (SAC, p. 4.)  On June 24, 2004, Plaintiff alleges a litigation coordinator determined he did not have a learning disability.  (*Id.*) Plaintiff further alleges that on June 27, 2004, Centinela State Prison Appeals Coordinator, D.J. DeGeus,

---

[1]In its February 8, 2010 Order, the District Court found Plaintiff waived his equal protection claims against Defendant Almager, Favila, Gurbino and Cook.  Doc. No. 52 at 7:25-8:7.  In the Order, Judge Anello also ruled Plaintiff's equal protection claims against Defendants DeGeus and Shipman were dismissed without leave to amend for failure to state a claim. [Doc. No. 52 at 9:11-16.]

[2]Plaintiff's ADA claim against Defendants in their individual capacities was dismissed with prejudice by the District Court on June 30, 2008. [*See* Doc. No. 28 at 3:1-4.] Accordingly, Plaintiff's ADA claim against Defendants in their official capacities remains.

wrote in a CDC 1824 Screening Form that assistance with dyslexia was not an appropriate accommoda-tion request under the Americans with Disabilities Act which denied Plaintiff equal access claim under the Armstrong Remedial Plan ("ARP").  (*Id.*)

On May 27, 2005, Plaintiff contends a memorandum concerning "Armstrong-Learning Disabled inmates" was issued to prison staff.  (SAC, p. 4.)  Plaintiff alleges the memorandum instructed staff to stop referring inmates with learning disabilities for verification.  (*Id.*)

On March 8, 2006, Plaintiff alleges he filed another 602 appeal with an attached CDC 1824 Form, which resulted in a referral for a comprehensive evaluation of Plaintiff's learning disability.  (*Id.* at pp. 4-5.)  Plaintiff alleges that, although he was scheduled for an appointment with an "outside community psychologist", the appointment was cancelled and on June 12, 2006, he received an amended second level response to his 602 appeal, which rescinded the grant of a referral to an outside psychologist for learning disability testing.  (*Id.* at p. 5.)

## IV.

## MOTION FOR SUMMARY JUDGMENT

### A.    FED.R.CIV.P. 56 Standard of Review

Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party has shown it is entitled to judgment as a matter of law.  *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56(c)).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218.  To avoid summary judgment, the non-moving party is "required to present signifi-cant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d at 1218 (citations

1   omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material

2   fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable

3   jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.

4   2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323); *see also Anderson v. Liberty Lobby, Inc.*, 477

5   U.S. 242, 249 (1986). To "defeat a summary judgment motion ..., the non-moving party 'may not rest

6   upon the mere allegations or denials' in the pleadings. FED.R.CIV.P. 56(e); *Berg v. Kincheloe*, 794 F.2d

7   457, 459 (9th Cir. 1986) (opposing party cannot rest solely on conclusory allegations of fact or law).

8   Instead, the non-moving party "must establish the existence of a genuine factual dispute on the basis of

9   admissible evidence; bare allegations without evidentiary support are insufficient to survive summary

10  judgment." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc*., 515 F.3d 1019, 1033 n.14 (9th

11  Cir. 2008).

12      However, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255;

13  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn

14  testimony "is to be accepted as true .... [The non-movant's] evidence should not be weighed against the

15  evidence of the [movant]."). All reasonable inferences that may be drawn from the facts placed before

16  the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587; *Anderson*, 477

17  U.S. at 255. At the summary judgment stage, "[c]redibility determinations, the weighing of the

18  evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

19  judge." *Anderson*, 477 U.S. at 255; *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036

20  (9th Cir. 2005); *see also Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 968 (9th Cir. 1981) (finding

21  district court erred in granting summary judgment when the affidavits and other evidence raised

22  credibility issues); *United States v. Two Tracts of Land in Cascade County, Montana*, 5 F.3d 1360, 1362

23  (9th Cir. 1993) (reversing district judge's decision to grant summary judgment based upon an assess-

24  ment of nonmoving party's credibility).

25  **B.    Arguments**

26      **1) Defendants' Arguments**

27      Defendants move for summary judgment on Plaintiff's Second Amended Complaint pursuant to

28  Federal Rule of Civil Procedure 56 on the grounds that: (1) Plaintiff cannot demonstrate Defendants

    were deliberately indifferent to a risk of harm to Plaintiff, or that serious harm existed and (2) Defen-

1  dants complied with the *Armstrong* Remedial Plain in accordance with the Americans with Disabilities

2  Act ("ADA"). [Doc. No. 69-1, at 1:9-15.]  Defendants also seek qualified immunity on the Eighth

3  Amendment claim arguing a constitutional violation has not been established.  *Id.*

4  **2) Plaintiff's Arguments**

5  Plaintiff opposes Defendants' motion for summary judgment arguing the accommodation letters

6  sent on his behalf to the courts by Defendant Shipman were inadequate and not submitted to a state

7  court ADA coordinator as required under the California Rules of Court. [Doc. No. 76 at 5, 7, 9, 12, 13,

8  22.]  Plaintiff also objects to the CDC's cessation of inmate referrals to outside physicians for confirma-

9  tion of learning disabilities.  [Doc. No. 76 at 10.]

10  **C.   Discussion**

11  **1)  Eighth Amendment**

12  Defendants argue they are entitled to judgment as a matter of law pursuant to FED.R.CIV.P. 56

13  because there is no triable issue of fact introduced in this litigation that impugns the adequacy of

14  Plaintiff's access to life's necessities.  Defendants also argue there is no evidence their actions placed

15  Plaintiff at risk of serious harm.

16  "Whatever rights one may lose at the prison gates, ... the full protections of the eighth amend-

17  ment most certainly remain in force.  The whole point of the amendment is to protect persons convicted

18  of crimes."  *Spain v. Procunier*, 600 F.2d 189, 193-94 (9th Cir. 1979) (citation omitted).  The Eighth

19  Amendment, however, is not a basis for broad prison reform.  It requires neither that prisons be

20  comfortable nor that they provide every amenity one might find desirable.  *Rhodes v. Chapman*, 452

21  U.S. 337, 347, 349 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Rather, the Eighth

22  Amendment proscribes the "unnecessary and wanton infliction of pain," which includes those sanctions

23  that are "so totally without penological justification that it results in the gratuitous infliction of suffer-

24  ing."  *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976); *see also Farmer*, 511 U.S. at 834; *Rhodes*, 452

25  U.S. at 347.  This includes not only physical torture, but any punishment incompatible with "the

26  evolving standards of decency that mark the progress of a maturing society."  *Trop v. Dulles*, 356 U.S.

27  86, 101 (1958); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  To assert an Eighth Amendment

28  claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements:

one objective and one subjective.  *Farmer*, 511 U.S. at 834; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

**A.  Objective Requirement - Defendant Has Given Plaintiff Adequate Medical Care and Attention To Manage His Learning Disability**

"Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *Hoptowit*, 682 F.2d at 1246; *Farmer*, 511 U.S. at 833; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

To demonstrate Plaintiff's learning disability received adequate attention and care as opposed to deprivation, Defendants have shown, and it is undisputed, that after they received a referral request on February 10, 2003 regarding dyslexia from Plaintiff's English Teacher, Defendants ensured Plaintiff was examined by: (1) prison medical staff on February 23, 2003, (2) a clinical psychologist on July 11, 2003, (3) a Unit Classification Committee on July 29, 2003, and clinical psychologist Y. Armenta on March 27, 2006 to evaluate the existence of a learning disability.  [DeGeus Decl. at 2:16-3:10; Exh 1 to Sep. Statement at pp.17; [Shipman Decl. at 4:4-8.]

Plaintiff notes despite undergoing several examinations at the prison, he was not sent to an outside psychologist for verification of his dyslexia.  Defendants explain Plaintiff was not given an examination from a psychologist outside the prison system because it is not prison policy to do so, nor is it required under the *Armstrong* Remedial Plan.  [Defs. Sep. Stat. at 4:3-9, 4:21-23;  October 22, 2003 CDCR Memorandum at  Exh. 1 on p. 20, May 27, 2005 Giurbino Memorandum at Exh. 1 on p. 25.]

Plaintiff also objects to Defendants' failure to transfer him to prison with a Disability Placement Program ("DPP").  However, Defendants have shown a transfer was denied  because Plaintiff's disability was not verified by medical staff and there is no special program in the CDC system for inmates who have only learning disabilities. [Defs. Sep. Stat. at 3:17-4:2, August 7, 2003 Giurbino Memorandum at Exh. 1 on p.17.]

Although prison staff could not confirm the existence of a learning disability despite Plaintiff's various medical consultations, confirmation was not required to receive an accommodation, and prison library staff was alerted to provide Plaintiff with assistance.  [DeGeus Decl. at 2:1-4 and 3:21-25; Shipman Decl. at 2:24-3:3.]  In addition, it is undisputed that, although Defendants did not refer Plaintiff

6

to an outside specialist or provide a Disability Placement Program, Defendants did indeed make accommodations to assist Plaintiff with his legal work.  Specifically, Defendant Shipman assisted Plaintiff with court filings by: (1) writing to various courts to notify staff of Plaintiff's request for accommodation, and (2) instructing prison library personnel on how to best accommodate the learning disabilities Plaintiff may have.  [Shipman Decl. at 2:20-3:12; 4:17-21.]  After a review of the undisputed facts detailing the medical care Plaintiff received to assess and accommodate his learning disability, the Court finds Plaintiff did receive adequate care as to his learning disability in accordance with the Eighth Amendment and the guidelines set forth in the *Armstrong* Remedial Plan.  [*Armstrong* Remedial Plan at Exh. V to Motion for Judicial Notice at p. 7] **Accordingly, IT IS RECOMMENDED**, the Court find Defendants have met their burden as to the objective prong of the Eighth Amendment inquiry by showing the prison furnished Plaintiff with adequate medical care and assistance necessary to communicate with the courts in light of his dyslexia.

### B.  Subjective Requirement - Defendant Did Not Disregard a Substantial Risk of Serious Harm to Plaintiff

The subjective requirement, relating to the defendants' state of mind, requires "deliberate indifference."  *Allen*, 48 F.3d at 1087.  "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 835.

Defendants point to their ongoing responsiveness to Plaintiff's learning disability to demonstrate there was no disregard on their behalf for Plaintiff's condition or the risk it posed in his ability to communicate with the courts.  Specifically, Defendant Shipman has demonstrated she did not disregard Plaintiff's condition, but instead wrote various letters to the courts to inform them of Plaintiff's disability, his limitations and his requested accommodations.  Furthermore, when Defendant Shipman learned Plaintiff was dissatisfied with the content and wording of her letters, she revised them to address his concerns and sent a second set of letters to the courts.  [Shipman Decl. at 2:20-3:12; 4:17-21.] Plaintiff contends Defendant Shipman erred by sending the letters directly to attention of the state court justices instead of sending the letters to a designated state ADA court contact person.  However, there is no evidence to demonstrate that by addressing the letters to the justices themselves the court did not

1  receive the information from Defendant Shipman.  Accordingly, this Court does not draw an inference

2  of deliberate indifference from the fact that Defendant Shipman addressed the letters to the courts as

3  opposed to an ADA coordinator.  It is undisputed Plaintiff's requests for assistance due to his learning

4  disability were processed by the CDC and moved along the chain of command to the Director's Level

5  where they were addressed.  **Accordingly, IT IS RECOMMENDED**, the Court find Defendants have

6  met their burden as to the subjective prong of the Eighth Amendment inquiry by showing Defendants

7  were not deliberately indifferent to Plaintiff's learning disability and sought to counteract the risk of

8  failure to communicate with the courts by informing the court of his condition and of his requested

9  accommodations.

10  **2.) Defendants' Request For Qualified Immunity Is Moot In Light Of the Court's**

11  **Recommendation that No Constitutional Violation Occurred**

12          The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to

13  liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The defense of "qualified immunity" protects

14  "government officials . . . from liability for civil damages insofar as their conduct does not violate

15  clearly established statutory or constitutional rights of which a reasonable person would have known."

16  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This standard "'gives ample room for mistaken

17  judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"

18  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343

19  (1986)); *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001); *Saucier v. Katz*, 533 U.S. 194, 205 (2001)

20  ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the

21  legal constraints on particular police conduct.").

22          The required first step in a qualified immunity analysis "is to consider the materials submitted in

23  support of, and in opposition to, summary judgment, in order to decide whether a constitutional right

24  would be violated if all facts are viewed in favor of the party opposing summary judgment."  *Jeffers*,

25  267 F.3d at 909 (citing *Saucier*, 533 U.S. at 201).  "If no constitutional right would have been violated

26  were the allegations established, there is no necessity for further inquiries concerning qualified

27  immunity."  *Saucier*, 533 U.S. at 201; *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1078 (9th Cir.

28  2003).

As explained in the Court's discussion of Plaintiff's Eighth Amendment claim and after consideration of all the undisputed facts presented, it is unnecessary for the Court to determine Defendants entitlement to qualified immunity because the Court has determined and recommended a finding that Defendants have not violated the Eighth Amendment in their treatment of Plaintiff's condition.

   3) **ADA Claim**

The ADA, 42 U.S.C. § 12132, applies in a prison context.  (See 42 U.S.C. § 12131(1)(B); *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998) (Court held state prisons fell squarely within the ADA's Title II's statutory definition of the "public entity," which includes "any...instrumentality of a State...or local government").  In order to state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefits of some public entity's services, programs or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*See O'Guinn v. Lovelock Correctional Center,* 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *Mcgary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

In order to recover monetary damages under Title II of the ADA in a failure to accommodate case, plaintiff must prove intentional discrimination, the standard for which is deliberate indifference. *Duvall v. County Kitsap*, 260 F.3d 1124, 1138 (9thCir. 2001).  *See also Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 11998).  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall*, 157 F.3d at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).  Plaintiff must identify "specific reasonable" and "necessary accommodations" defendant failed to provide.  *Id.* (citing *Memmer v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999).  To show defendant had knowledge of a harm to a federally- protected right is substantially likely, plaintiff must inform the public entity of his

1   or her need for accommodation.  *Id.*  The public entity is then put on notice of plaintiff's need for

2   accommodation.  *Id.*  To show defendant failed to act upon his or her knowledge of substantially likely

3   harm to a federally protected right, plaintiff must show defendants' failure to act was more than

4   negligent, but involved an element of deliberateness.  *Id.*

5          The Armstrong Remedial Plan sets forth the California Department of Corrections' ("CDC") policy

6   to provide access to disabled inmates and parolees.[3]  *See* Defs. Request for Judicial Notice Exh. V.

7   Under the Armstrong Remedial Plan, the CDC "shall provide reasonable accommodations or modifica-

8   tions for known physical or mental disabilities ... [which] include inmate or staff assistance."  *Id.* at 7.

9   In addition, the Armstrong Remedial Plan requires the CDC to afford equal access to the courts and

10  specifically states: "the institutions shall provide a letter to the court identifying the nature and severity

11  of the inmate's disability and limitation(s), including a brief description of the inmate's request for

12  accommodation by the court."  *Id.*

13         Here, it is undisputed Defendant Shipman provided the required letters under the Armstrong

14  Remedial Plan to the various courts in which Plaintiff was litigating. [Shipman Decl. at 2:20-3:12; 4:17-

15  21.]  There is no appointment of counsel requirement in the Armstrong Remedial Plan, therefore, it

16  cannot be shown Defendant DeGeus demonstrated deliberate indifference to Plaintiff's right to court

17  access by denying his request for counsel. [Shipman Decl. at 2:8-10; Degeus Decl. at 3:13-20.] As for

18  Defendant Cook's report, which indicated her inability to verify Plaintiff's learning disability, this

19  action also cannot be said to demonstrate deliberate indifference because Plaintiff received the required

20  accommodations under the Armstrong Remedial Plan regardless of whether CDC officials documented

21  his disability.  [DeGeus Decl. at 2:1-4 and 3:21-25; Shipman Decl. at 2:24-3:3.]  **Accordingly, IT IS**

22  **RECOMMENDED** that the Court find Plaintiff has not identified any required accommodations under

23  the Armstrong Remedial Plan which Defendants deliberately failed to provide.

24  ///

25  ///

26

27         [3] On June 29, 1994, a suit under the Americans with Disabilities Act ("ADA") / Rehabilitation Act

28  ("RA") was brought in federal court on behalf of all present and future California State prisoners and parolees
    with mobility, sight, hearing, learning, and kidney disabilities.  *See Armstrong v. Davis, et al.*, U.S. Distr. Ct.
    (N.D. Cal.) No. C-94-2307 CW.  After finding defendants violated the ADA and RA, the court entered a remedial
    order requiring implementation of the California Department of Corrections ("CDC") disability placement plan.
    [*See* Defs. Request for Judicial Notice Exh. V.]

**V.**

**REQUEST FOR JUDICIAL NOTICE**

Plaintiff requests the Court take judicial notice of a staff referral, medical verification, Centinela State Prison operational procedure, court ordered remedial plan, and a CDC Appeal Screening Form. [*See* Exhs. A-E of Plaintiff's Request for Judicial Notice.]

In addition, Defendants request the Court take judicial notice of various pleadings, opinions, court orders and letters to the court in support of their motion to dismiss.  [*See* Exhs. A-X of Defs. Request for Judicial Notice.]

Judicial Notice is governed by Federal Rule of Evidence 201 which governs only judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FRE 201.  In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 698 (9th Cir. 2001).  Nor may the court take judicial notice of any matter that is in dispute.  *Lee*, 250 F.3d at 689-90.

The Court may take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410-426-27 (3rd Cir. 1999). Similarly, "[w]hile a court may take judicial notice of a judicial or administrative proceeding . . . a court can only take judicial notice of the *existence* of those matters of public record (the existence of a motion or of representations having been made therein) but not of the *veracity* of the arguments and disputed facts contained therein.  *United States v. So. Cal. Edison Co.*, 300 F.Supp. 2d 964, 974 (E.D. Cal. 2004) (*citing U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992).)

1    Accordingly, **IT IS RECOMMENDED that the Court GRANT** Plaintiff's request and

2    Defendants' request to take judicial notice of Plaintiff's Exhibits A through E and Defendants' Exhibits

3    A through X for the purpose of acknowledging their existence as public documents capable of accurate

4    and ready determination, but not for the truth of their contents or for any findings of fact stated therein.

5                                              **VI.**

6                          **CONCLUSION AND RECOMMENDATION**

7    After a review of the evidence submitted, no genuine issue of material fact has been presented which

8    could convince a reasonable jury to find for the plaintiff.  For the foregoing reasons, **IT IS HEREBY**

9    **RECOMMENDED** the Court issue an Order **GRANTING** Defendants' Motion for Summary Judgment.

10   **IT IS FURTHER ORDERED** that no later than **December 21, 2010**, any party to this action

11   may file written objections with the Court and serve a copy on all parties.  The document should be

12   captioned "Objections to Report and Recommendation."

13   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and

14   served on all parties no later than **January 11, 2011**.  The parties are advised that failure to file

15   objections within the specified time may result in waiver of the right to raise those objections on appeal

16   of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *see also Martinez v.*

17   *Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

18   **IT IS SO ORDERED.**

19   Dated: November 29, 2010

20                                              _____

21                                              Hon. William McCurine, Jr.
                                                U.S. Magistrate Judge
22                                              United States District Court

23

24

25

26

27

28